# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID V. JORDAN, *Plaintiff*, | : : : |
| v. | : CIVIL ACTION NO. 24-CV-0906 : |
| DR. SAEED BAZEL, *et al.*, *Defendants*. | : : : |

## MEMORANDUM

**Pappert, J.**                                                                                          **December 15, 2025**

*Pro se* Plaintiff David V. Jordan, a convicted and sentenced prisoner, commenced this action alleging that his rights were violated by Defendants Dr. Saeed Bazel, M.D., and Registered Nurse Ann while receiving medical treatment. In his Second Amended Complaint (Dkt. No. 47),[1] Jordan asserts constitutional claims pursuant to 42 U.S.C. § 1983, as well as claims under state law for assault and battery.

Dr. Bazel moved to dismiss the Amended Complaint (Dkt. No. 58) pursuant to Federal Rule of Civil Procedure 12(b)(6) and Jordan responded to the motion (Dkt Nos. 68 and 69), which the Court now denies.

### I[2]

Jordan claims that on March 29, 2023, while he was housed at SCI Phoenix, he was suffering from an infected cyst on the back of his head and arrived at the medical department to receive treatment. (SAC at 3-4.) While discussing treatment, Jordan indicated that he "only wanted Dr. Bazel to use a needle to drain the fluid from the cyst

---

[1] The Second Amended Complaint docketed at Dkt. No. 47 is the operative pleading in this case. Defendant Nurse Ann has filed an Answer to the SAC. (*See* Dkt. No. 72.)

[2] The following factual allegations are taken from the SAC. The Court adopts the sequential pagination supplied by the CM/ECF docketing system.

as opposed to a scalpel as Jordan noticed Dr. Bazel holding a scalpel." (*Id.* at 4.) Jordan "repeated his concerns asking Dr. Bazel not to use a knife." (*Id.*) Dr. Bazel agreed and put the scalpel away. (*Id.*) Jordan also told Dr. Bazel, as he had on prior occasions, that "he would prefer if any incisions or removal of the cyst . . . be performed by a dermatologist, which Dr. Bazel is not." (*Id.*) Dr. Bazel refused Jordan's request to be treated by a dermatologist. (*Id.*)

Jordan was instructed by Dr. Bazel and Nurse Ann to lie on his stomach and face forward. (*Id.*) Nurse Ann "began to aggressively pin Jordan's head to the mattress with her hands." (*Id.*) "While Jordan's head was forcibly pinned to the mattress, Dr. Bazel began to forcibly cut into the cyst with a scalpel, causing an approximately one inch deep cut on the back of Jordan's head." (*Id.* at 5.) As a result, Jordan screamed and cried out in pain. (*Id.*) Dr. Bazel ignored Jordan's cries and continued to cut, purposely causing unnecessary pain and bleeding. (*Id.*) Nurse Ann also ignored Jordan's cries and continued to pin Jordan's head to the mattress so that the cutting could continue, purposely causing unnecessary pain and bleeding. (*Id.*) According to Jordan, "[p]rior to or during the forceful cutting of the cyst, Dr. Bazel refused to provide Jordan with a numbing medication to help reduce the purposeful infliction of pain on him." (*Id.*) Jordan also asserts that it was not medically necessary for Nurse Ann to pin Jordan's head and face to the mattress to subdue him so that Dr. Bazel could drain the cyst, ignoring Jordan's pleas and cries in the meantime. (*Id.* at 7.)

After Dr. Bazel finished the procedure, Nurse Ann said Jordan was "bleeding too much." Dr. Bazel ignored her and left the room. (*Id.* at 5.) Nurse Ann then packed the open wound with gauze, as it was bleeding profusely. (*Id.*) Blood dripped over Jordan's

2

face and clothing even though the wound had been packed. (*Id.*) Nurse Ann ordered Jordan to return to his cell. (*Id.*)

Jordan told a sergeant that the wound continued to bleed and returned to the medical department fifteen minutes later. (*Id.* at 6.) Upon arrival there, Jordan complained to Dr. Bazel and Nurse Ann, indicating his disappointment that they did not adhere to the agreement to only use a needle to aspirate fluid from the cyst until Jordan could be provided dermatology services. (*Id.*) Jordan also informed them that the wound continued to bleed. (*Id.*) Dr. Bazel ordered Jordan's head to be wrapped with an ace bandage to stem the bleeding. (*Id.* at 7.)

Jordan states Dr. Bazel used a scalpel to excise the cyst despite Jordan's specific instructions not to do so. (*Id.* at 6-7.) He also contends that Dr. Bazel had a duty to obtain informed consent from Jorden before cutting the cyst with a scalpel. (*Id.* at 6.) Jordan did not sign any consent forms and denies that he requested lancing of the cyst. (*Id.*)[3]

The day after the procedure, March 30, 2023, Jordan returned to the medical department at approximately 2:30 p.m. because the wound needed to be re-wrapped and because he was feeling extreme coldness in his skull causing intense pain. (*Id.* at 7.) Jordan was seen by Nurse Savage, who is not a defendant in this lawsuit. (*Id.*) Savage brought Jordan into the medical triage room where Nurse Ann was waiting. (*Id.*) "Without warning, once the bandage was removed, Nurse Ann began to aggressively place her thumb into Jordan's scalpel cut in an attempt to purposely inflict

---

[3] Jordan also alleges that "upon information and belief," Dr. Bazel was later terminated from providing medical care to inmates at SCI Phoenix "for unprofessional conduct because he personally used medication prescribed to other inmates there." (SAC at 7.)

3

unnecessary pain on him." (*Id.* at 7-8.) Jordan cried out in pain and Savage commented to Nurse Ann to "stop being so rough on him." (*Id.* at 8.) Nurse Ann then finished wrapping the wound in gauze. (*Id.*)

Jordan contends he bled for four to five days, suffering extreme pain and anguish, as well as emotional pain. (*Id.* at 7-8.) Based on the allegations in his Second Amended Complaint, Jordan asserts Eighth Amendment excessive force claims against both Defendants (Count I), an Eighth Amendment deliberate indifference to serious medical needs claim against Dr. Bazel (Count IV), and state law assault and battery claims against both Defendants (Counts II and III). (*Id.* at 8-9.) He seeks money damages. (*Id.* at 10-11.)

II

A 12(b)(6) motion tests the sufficiency of the allegations contained in the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss under Rule 12(b)(6), the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) ("Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." (internal quotation marks and citations omitted)). "Threadbare recitals of the elements of a cause of action, supported

by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. In determining whether a complaint states a plausible claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). The Court liberally construes the factual allegations of a self-represented litigant. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021).

### III

The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

The Eighth Amendment prohibits prison officials from unnecessarily and wantonly inflicting pain in a manner that offends contemporary standards of decency. *See Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992); *see also Whitley v. Albers*, 475 U.S. 312, 320-21 (1986) (Eighth Amendment protects convicted prisoners from any force applied "maliciously and sadistically for the very purpose of causing harm"). A claim under the Eighth Amendment contains subjective and objective components. *Hudson*, 503 U.S. at 8. A defendant "must act with a 'sufficiently culpable state of mind,' and the conduct must be objectively harmful enough to violate the Constitution." *Ricks v. Shover*, 891 F.3d 468 (3d Cir. 2018) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298, 303 (1991)).

Jordan has asserted two types of Eighth Amendment claims – one for excessive force and one for deliberate indifference to his medical needs. Dr. Bazel moves for dismissal of Jordan's Eighth Amendment claims pursuant to Rule 12(b)(6) and urges the Court to decline to exercise supplemental jurisdiction over the state law assault and battery claims. (*See* Dkt. No. 58-1 at 5-11.)

A

In assessing an Eighth Amendment excessive force claim, the Court must consider whether a prisoner has plausibly alleged that the force was applied "maliciously and sadistically to cause harm" rather than "in a good-faith effort to maintain or restore discipline." *Ricks*, 891 F.3d at 480 (citations omitted). The Eighth Amendment does not protect against a *de minimis* use of physical force, so long as it is not of a sort "repugnant to the conscience of mankind." *Brooks v. Kyler*, 204 F.3d 102, 107 (3d Cir. 2000) (quoting *Hudson*, 503 U.S. at 9-10). The factors used to determine whether the force applied was excessive include: (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response. *Id.* at 106 (citing *Whitley*, 475 U.S. at 321). Although the extent of an inmate's injuries is relevant to an Eighth Amendment analysis, "there is no fixed minimum quantum of injury that a prisoner must prove that he suffered through objective or independent evidence in order to state a claim for wanton and excessive force." *Id.* at 104. Thus, the inquiry must be driven by the extent of the force and the circumstances in which it is

6

applied, not by the resulting injuries. *Id.* at 108; *see also Smith v. Mensinger*, 293 F.3d 641, 648 (3d Cir. 2002).

Dr. Bazel moves for dismissal of the excessive force claim on the basis that Jordan does not allege Bazel applied any force during the procedure and the only force alleged was the pinning of Jordan's head by Nurse Ann. (*See* Dkt. No. 58-1 at 8-9.) He further argues that any alleged "force" employed was only that which was necessary to make an incision so that he could treat Jordan and there was nothing repugnant about his actions. (*Id.*)

Jordan alleges that he told Bazel that he only wanted him to use a needle to drain the fluid from the cyst as opposed to a scalpel, and told Bazel he would prefer any incisions or removal of the cyst be performed by a dermatologist. (SAC at 4.) He further alleges that, despite his requests, while Nurse Ann pinned Jordan to the mattress, "Dr. Bazel began to forcibly cut into the cyst with a scalpel, causing an approximately one inch deep cut on the back of Jordan's head," and causing Jordan to scream and cry out in pain. (*Id.* at 5.) According to Jordan's allegations, Dr. Bazel ignored Jordan's cries and continued to cut, purposely causing unnecessary pain and bleeding. (*Id.*) He also claims that "[p]rior to or during the forceful cutting of the cyst, Dr. Bazel refused to provide Jordan with a numbing medication to help reduce the purposeful infliction of pain on him." (*Id.*)

Reading the Complaint as a whole and taking all inferences in Jordan's favor, he has alleged sufficient facts to survive the motion to dismiss his excessive force claim against Dr. Bazel. It is not apparent on the face of the SAC that there was a need for the force used by Dr. Bazel or that he made any efforts to temper the severity of the

7

pain during the procedure. Instead, Jordan alleges that Dr. Bazel forcefully cut into the cyst, despite Jordan's cries of anguish and knowing that he had not administered any numbing medication before commencing the procedure.

Accepting Jordan's allegations as true at this stage, he has sufficiently alleged facts which could show that the force Dr. Basel used was excessive and applied "maliciously and sadistically to cause harm." *See, e.g.*, *Maple v. PA Mills*, No. 15-0341, 2015 WL 1840563, at *4 (S.D. Ill. Apr. 21, 2015) (allowing excessive force claim to pass statutory screening where plaintiff alleged that the means employed during a surgical procedure were cruel (citing *Washington v. Hively*, 695 F.3d 641, 643 (7th Cir. 2012) (holding that excessive force is present when official uses "more force than is necessary," resulting in "gratuitous pain or injury"); *Henderson v. Belfueil*, 197 F. App'x 470, 473 (7th Cir. 2006) (noting that excessive force claim could exist if "the means employed" during a medical procedure "were gratuitously cruel"))); *see also Walker v. Davis*, No. 22-0034, 2025 WL 825664, at *15 (N.D. Tex. Jan. 10, 2025) ("An individual continues to have a right to be free of excessive force even where that force is used in the context of a medical procedure."), *report and recommendation adopted*, No. 22-0034, 2025 WL 824351 (N.D. Tex. Mar. 13, 2025).

B

To state an Eighth Amendment claim based on the failure to provide constitutionally protected medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994); *see also Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (deliberate indifference to a serious medical need violates the Eighth

8

Amendment's proscription against cruel and unusual punishment). As to the objective element of this Eighth Amendment claim, "[a] medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted). As to the subjective element, "a prison official acts with 'deliberate indifference' if he knows of the serious medical need yet disregards it by failing to act reasonably." *Montanez v. Price*, 154 F.4th 127, 141 (3d Cir. 2025) (citing *Farmer*, 511 U.S. at 837). "A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "That knowledge can be inferred from circumstantial evidence, including the obviousness of the serious health need." *Montanez*, 154 F.4th at 141 (citing *Farmer*, 511 U.S. at 842). The United States Court of Appeals for the Third Circuit found deliberate indifference in various contexts, "including where (1) prison authorities deny reasonable requests for medical treatment, (2) knowledge of the need for medical care is accompanied by the intentional refusal to provide it, (3) necessary medical treatment is delayed for non-medical reasons, and (4) prison authorities prevent an inmate from receiving recommended treatment for serious medical needs." *Id.* (citing *Pearson v. Prison Health Serv.*, 850 F.3d 526, 538 (3d Cir. 2017)).

Not every complaint of inadequate prison medical care rises to the level of deliberate indifference. *Anderson v. Price*, No. 22-3058, 2023 WL 5814664, at *2 (3d

Cir. Sept. 8, 2023).  Allegations of medical malpractice, negligence, and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation.  *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004); *Hayes v. Gilmore*, 802 F. App'x 84, 88 (3d Cir. 2020) (*per curiam*).  "Where a prisoner has received some amount of medical treatment, it is difficult to establish deliberate indifference, because prison officials are afforded considerable latitude in the diagnosis and treatment of prisoners."  *Palakovic v. Wetzel*, 854 F.3d 209, 227 (3d Cir. 2017) (citing *Durmer v. O'Carroll*, 991 F.2d 64, 67 (3d Cir. 1993)).  Nonetheless, "prison officials may not, with deliberate indifference to the serious medical needs of the inmate, opt for 'an easier or less efficacious treatment' of the inmate's condition."  *Id.* at 228 (quoting *West v. Keve*, 571 F.3d 158, 162 (3d Cir. 1978)).

   Dr. Bazel argues that Jordan's allegations of deliberate indifference are insufficient to state a plausible claim.  (*See* Dkt. No. 58-1 at 9-10.)  Specifically, he contends he is a licensed medical doctor who was qualified to treat Jordan and he exercised his professional judgment in doing so.  (*Id.* at 10.)  Bazel asserts further that the manner with which he treated Jordan was of sound professional judgment and should not be second-guessed.  (*Id.*)  According to Dr. Bazel, Jordan has never alleged that Bazel was not the proper person to perform the procedure.  (*Id.*)

   But Jordan alleges that while discussing treatment, he indicated that he "only wanted Dr. Bazel to use a needle to drain the fluid from the cyst as opposed to a scalpel as Jordan noticed Dr. Bazel holding a scalpel" and that he repeated these concerns.  (SAC at 4.)  Jordan also alleges that he informed Dr. Bazel, as he had on prior occasions, that "he would prefer if any incisions or removal of the cyst . . . be performed

10

by a dermatologist, which Dr. Bazel is not." (*Id.*) Additionally, Jordan claims that while his head was pinned to the mattress by Nurse Ann, Dr. Bazel forcibly cut into the cyst with a scalpel, creating an approximately one inch deep cut on the back of his head. (*Id.* at 5.) According to Jordan, even though he screamed and cried out in pain, Bazel ignored his cries and continued to cut, purposely causing unnecessary pain and bleeding. (*Id.*) Further, Jordan alleges that "Dr. Bazel refused to provide Jordan with a numbing medication to help reduce the purposeful infliction of pain on him." (*Id.*)

Again, taking these allegations as true as the Court is required to do at this stage, Jordan has adequately stated a deliberate indifference claim against Dr. Bazel for the way he conducted the procedure. *See, e.g., Szemple v. Univ. of Med. & Dentistry of N.J.*, 451 F. App'x 187, 191 (3d Cir. 2011) (*per curiam*) (reversing dismissal of deliberate indifference claims on screening where plaintiff alleged that doctor performed tooth extraction without sedation despite knowing of plaintiff's heart condition causing plaintiff's "heart rate to increase, chest pains, and shortness of breath," continued with the procedure despite plaintiff's complaints of pain and profuse bleeding, and discharged plaintiff while he was still bleeding); *Brinson v. Illinois Dep't of Corr.*, No. 22-0280, 2023 WL 3568569, at *2 (S.D. Ill. May 19, 2023) ("Plaintiff has adequately pled a claim of deliberate indifference against Dr. Swanson for the manner in which Dr. Swanson performed the extractions. Plaintiff states that Dr. Swanson did not have experience, deliberately broke his teeth out of his mouth, intentionally hurt his mouth and gums, and did not repair the destruction to his mouth." (cleaned up)); *see also Burk v. Crowe*, No. 19-5792, 2020 WL 42758, at *3 (E.D. Pa. Jan. 3, 2020) (allowing medical deliberate indifference claim to pass statutory screening where prisoner alleged

11

that doctor failed to respond or change medication after being informed that the switch was causing serious side effects (citing *White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990) ("What may state a cause of action is Dr. Napoleon's persistence in using Dilantin, or Dilantin plus phenobarbital, after Nazario told him that his seizures had increased in violence and frequency."))).

For the foregoing reasons, the Court denies Dr. Bazel's motion to dismiss and allows Jordan's claims to proceed to discovery for further factual development.[4]  An appropriate Order follows.

**BY THE COURT:**

*/s/ Gerald J. Pappert*
**Gerald J. Pappert, J.**

---

[4] The Court need not address Jordan's state law claims as Bazel did not move for dismissal of those claims under Rule 12(b)(6).